IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA PERRY,                              3:11-cv-01067-BR

                Plaintiff,              OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner Social Security
Administration,

                Defendant.


MERRILL SCHNEIDER
Schneider Law Offices
P.O. Box 14490
Portland, OR 97293

            Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
Social Security Administration
**LEISA A. WOLF**
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98105-7075

        Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Patricia Perry seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    For the following reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

    Plaintiff applied for SSI on August 11, 2008, alleging disability beginning January 1, 2004. Tr. 114. Plaintiff's claim was denied initially and again on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ). An ALJ held a hearing on September 21, 2009, at which

Plaintiff appeared with her attorney and testified.  A vocational expert (VE) also appeared and testified.  On December 23, 2009, the ALJ issued a decision finding that Plaintiff is not disabled and, therefore, is not entitled to benefits.  On July 5, 2011, the Appeals Council denied Plaintiff's request for review, and, therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

On September 2, 2011, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on October 3, 1969, and was 39 years old at the time of the hearing before the ALJ.  Tr. 40.  Plaintiff has obtained a GED, but she has not completed any college credits or vocational training.  Plaintiff is capable of reading English and performing basic math.  Plaintiff has volunteered as a secretary, worked as a janitor, and worked at a recycling center. She also has done some babysitting in her home.

Plaintiff alleges disability due to nerve problems, numbness, chronic ulcers, edema, Hepatitis B and C, anxiety, and depression.  Plaintiff's Hepatitis C was successfully treated with Interferon in 2004.  Plaintiff alleges she has suffered from arthralgia (pain) in multiple joints and chronic edema and skin lesions on her legs following the Interferon treatment.

Plaintiff experiences numbness in her feet, arms, and hands and has been diagnosed with small fiber neuropathy.  Plaintiff alleges she suffers from bloating, gas, and constipation and had surgery in November 2008 to remove a large polyp in her colon. Plaintiff has sleep apnea and is obese.  Plaintiff stopped working in 1994 due to heroin and alcohol addiction, but she has been clean since February 2005 and participates in a recovery program.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R.

§ 416.920.  Each step is potentially dispositive.  The claimant
bears the burden of proof at Steps One through Four.  *See*
*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir.
2009).  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
1999).

    In Step One, the claimant is not disabled if the Commis-
sioner determines the claimant is engaged in substantial gainful
activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052
(9th Cir. 2006).  *See also* 20 C.F.R. § 416.920(a)(4)(I).

    In Step Two, the claimant is not disabled if the Commis-
sioner determines the claimant does not have any medically severe
impairment or combination of impairments.  *Stout*, 454 F.3d at
1052.  *See also* 20 C.F.R. § 416.920(a)(4)(ii).

    In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of a
number of listed impairments that the Commissioner acknowledges
are so severe they preclude substantial gainful activity.  *Stout*,
454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iii).  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

    If the Commissioner proceeds beyond Step Three, he must
assess the claimant's Residual Functional Capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related

physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(v).  At step five, the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett*, 180 F.3d

at 1098.  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## II.   **The ALJ's Findings**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 5, 2008, her alleged onset of disability.  *See* 20 C.F.R. §§ 416.920(b), 416.971 *et seq*.

At Step Two, the ALJ found Plaintiff had the following severe impairments:  degenerative disc disease of the cervical spine, Hepatitis C status post Interferon treatment, small fiber neuropathy, depression with anxiety, and substance-abuse disorder.  *See* 20 C.F.R. § 416.920(c).  Additionally, the ALJ found Plaintiff has nonsevere impairments of mild obesity and sleep apnea and that these conditions do not cause more than a minimal effect on Plaintiff's ability to perform work-related activities.  Tr. 19.

At Step Three, the ALJ found Plaintiff's impairment or combination of impairments did not meet or medically equal a Listed Impairment.  *See* 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 20.  The ALJ determined Plaintiff has the RFC to

perform light work as defined in 20 CFR
416.967(b).  The claimant can frequently
balance, stoop, crouch, and climb ramps and
stairs; however, she can only occasionally
kneel, crawl, and climb ladders, ropes and
scaffolds.  The claimant should limit
overhead reach and handling to no more than
occasional.  The claimant is limited to
performing one to two step tasks.  She should
avoid even frequent exposure to workplace
hazards such as moving machinery and
unprotected heights as well as any exposure
to alcohol in the workplace due to her
history of abuse.

Tr. 21.

At Step Four, the ALJ found Plaintiff has not performed any

past relevant work.  *See* 20 C.F.R. § 416.965.

At Step Five, the ALJ concluded, after considering

Plaintiff's age, education, work experience, and RFC, that jobs

exist in significant numbers in the national economy that

Plaintiff can perform.  *See* 20 C.F.R. §§ 416.960(c), 416.966.

Specifically, the ALJ found Plaintiff has the ability to perform

jobs such as bottle-line attendant, Marker II, and/or a packing-

machine can feeder.

## DISCUSSION

Plaintiff contends the ALJ made the following errors:

(1) failed to consider properly Plaintiff's colon issues;

(2) improperly discounted Plaintiff's credibility; (3) improperly

discounted the opinion of Michael Potter, M.D., Plaintiff's

9 - OPINION AND ORDER

treating physician; (4) improperly discounted the opinions of reviewing physicians; (5) improperly discredited the statements of the lay-witness Valorie Janssen; and (6) improperly refused to order a psychological consultative examination.

## I.   Plaintiff's Colon Issues

Plaintiff contends the ALJ erred by failing to consider her colon issues at any step of the evaluative process.  Plaintiff had a hemicolectomy to remove a large carpeting-type polyp in November 2008.  Tr. 373.  Plaintiff contends since that time she has suffered constipation with painful bloating and gas with occasional vomiting and nausea.

### A.   Step Two

At Step Two the ALJ must determine whether the claimant has any impairment or combination of impairments that significantly limit her ability to perform basic work activities.  *See* 20 C.F.R. § 416.920(c).  In this case the ALJ resolved Step Two in Plaintiff's favor when he concluded Plaintiff had demonstrated impairments (degenerative disc disease, hepatitis C status post-Interferon treatment, small-fiber neuropathy, depression, and substance-abuse disorder) sufficient to satisfy the requirements at Step Two.  The ALJ then continued the sequential decision-making process until he reached a determination at Step Five.

Thus, any error on the part of the ALJ for failing to designate Plaintiff's colon issues or gastric pain as nonsevere

10 - OPINION AND ORDER

at Step Two was harmless because it did not prejudice Plaintiff in light of the fact that the ALJ ultimately resolved Step Two in Plaintiff's favor. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(any failure by the ALJ to list bursitis as severe at step two was harmless error because the ALJ considered the claimant's functional limitations of bursitis at step four). *See also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error by the ALJ in omitting obesity from the list of severe impairments at step two was harmless because the ALJ resolved step two in claimant's favor).

**B.   RFC**

The record reflects the ALJ addressed Plaintiff's colon issues and her alleged attendant functional limitations during his evaluation of Plaintiff's RFC.  To the extent that Plaintiff contends the ALJ failed to properly do so, the Court addresses that issue below.  *See* 20 C.F.R. § 416.923 (after claimant has surmounted step two by showing a severe impairment, the ALJ must consider the functional limitations imposed by all medically determinable impairments, including those found to be nonsevere at step two, in the remaining steps of the decision).

**C.  Step Three**

Plaintiff bears the burden of proving that she meets or equals a Listing at Step Three.  Thus, unless Plaintiff presents evidence sufficient to establish equivalence, the ALJ is not

required to make an equivalency determination.  *See Burch*, 400
F.3d at 683.  *See also Lewis*, 236 F.3d at 514.

Plaintiff contends the ALJ erred by failing to consider
whether her colon issues met or equaled a Listing at Step Three.
In this case the ALJ specifically asked Plaintiff's counsel at
the hearing whether Plaintiff was asserting that her colon issues
met the requirements of the Listings.  Plaintiff's counsel
plainly indicated she was not.  Tr. 39-40.  The ALJ, therefore,
did not err at Step Three.

## II.  <u>Plaintiff's Credibility</u>

To determine whether a claimant's testimony regarding
subjective pain or symptoms is credible, an ALJ must perform two
stages of analysis.  20 C.F.R. § 416.929.  *See also Molina v.
Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  The first stage is
a threshold test in which the claimant must produce objective
medical evidence of an underlying impairment that could
reasonably be expected to produce the symptoms alleged.  *Id.* at
1112.  *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th
Cir. 2008).  At the second stage of the credibility analysis, the
ALJ must provide clear and convincing reasons for discrediting
the claimant's testimony regarding the severity of her symptoms
absent affirmative evidence of malingering.  *Carmickle v. Comm'r
Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cri. 2008).  *See also
Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti*, 533 F.3d at 1039. *See also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side-effects of any pain medication, and relevant character evidence. *Tommasetti*, 533 F.3d at 1039.

Plaintiff testified at the hearing that she feels her worst impairment is her emotional health and that she currently is prescribed Fluoxetine for her emotional issues. Tr. 51-52. Plaintiff testified she has been prescribed Trazadone for her chronic joint and neck pain. Tr. 52. Plaintiff also testified she suffers chronic, severe pain in her hands and wrists, which makes it difficult for her to hold things and lift. Tr. 53-54. Plaintiff testified her feet swell, which makes it hard to stand, and sitting for too long causes numbness in her legs. Tr. 55. Plaintiff stated her back and joint pain cause stiffness and makes it difficult for her to bend or to kneel. Tr. 55-56. She takes Ibuprophen and Methadone for pain. Plaintiff also stated she was prescribed Methadone for her heroin addiction, but she remains on Methadone because of her pain.

Plaintiff testified she can walk six blocks, stand for 15 minutes, sit and type for 15 minutes, and is able to lift her two-year-old grandson.  Tr. 58-59, 71.  Plaintiff attends Bible study once a week, grocery shops at least two times per month, and drives.  She has difficulty holding a pen.  Tr. 42, 59-60, 62.  She is able to get along with co-workers and supervisors. Tr. 64.  She gets her children ready for school; makes breakfast; helps her children with their homework; makes dinner; gardens; feeds the rabbit, cats, and goldfish; and does the dishes and laundry.  Tr. 64-65.  She often naps while her children are at school. Plaintiff also testified she used to exercise at the YMCA by riding a stationary bicycle, but she grew tired after 20 minutes with numbness in her feet and bottom and no longer exercises.  Tr. 69-70.  Plaintiff further testified she has been sober since February 2005.

The ALJ did not make a specific finding that Plaintiff was malingering.  The ALJ, therefore, was required to justify his determination as to Plaintiff's credibility with clear and convincing evidence.  *See Tommasetti*, 533 F.3d at 1039.

The ALJ found Plaintiff's medically determinable impairments can reasonably be expected to produce some symptoms.  The ALJ, however, concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely credible.

14 - OPINION AND ORDER

The ALJ discredited Plaintiff because her alleged restrictions were inconsistent with her daily activities and her ability to care for her children.  An ALJ may appropriately discount a claimant's credibility on the basis of activities of daily living when the claimant spends a substantial part of each day in physical pursuits that are transferrable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here the ALJ detailed numerous activities of daily living that are inconsistent with Plaintiff's alleged disability.  For example, the ALJ discussed Plaintiff's daily activities including driving, cooking, gardening, dishes, laundry, shopping, attending weekly Bible studies, occasional swimming classes, and babysitting her grandson.  The ALJ specifically noted Plaintiff's ability to watch two children (not her own) five days a week from 2005 to 2007 undermined her allegations that she is completely disabled.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

The Court is not persuaded by Plaintiff's argument that her ability to care for her children cannot form the basis of an adverse credibility determination.  Plaintiff argues her children assist with self-care and that she receives assistance with the children from her mother, adult daughter, and the father of one of the children.  Here the evidence cited by Plaintiff indicates the assistance that she receives is occasional in nature.

Tr. 68, 137, 151.  In addition, although Plaintiff contends she stopped babysitting because it became difficult, Plaintiff testified she performed the babysitting for two years, all of which was *after* her alleged onset date of January 1, 2004. Tr. 50.

The Court concludes the ALJ's interpretation of this evidence is reasonable and supported by substantial evidence in the record.  *See Molina*, 674 F.3d at 1113.  *See also Burch*, 400 F.3d at 681.

The ALJ also partially discredited Plaintiff on the basis that she alleged her primary impediment to working was her mental health despite the fact that she failed to seek treatment.  When assessing a claimant's credibility, an ALJ may properly rely on unexplained or inadequately explained failure to seek treatment. *Tommassetti*, 533 F.3d at 1039.  *See Burch*, 400 F.3d at 681.  Here the ALJ noted the fact that Plaintiff was prescribed Fluoxetine for her depression and anxiety and also that Plaintiff testified she received mental-health treatment through her addiction counselor, Debbie Osborne.  The ALJ pointed out that Osborne sent a letter indicating she provided addiction therapy only and did not provide Plaintiff with any separate mental-health treatment. The ALJ also noted Dr. Potter described Plaintiff's depression and anxiety appeared intermittent and situational and did not

describe any work-related limitations based on her mental health. Tr. 23-24.

The Court rejects Plaintiff's suggestion that the ALJ may not discount Plaintiff's credibility on the basis that she claims to have disabling mental-health limitations and, therefore, has not sought treatment. Plaintiff has not presented any evidence that her failure to seek mental-health treatment was attributable to her alleged mental illness. The ALJ's interpretation of this evidence is reasonable and supported by substantial evidence in the record. Thus, this Court will not second-guess the ALJ's conclusions. *See Thomas*, 278 F.3d at 959.

The ALJ also discounted Plaintiff's testimony on the basis that her complaints of physical limitations due to pain are inconsistent with her medical record and the absence of prescription pain medication. As discussed below, Plaintiff's complaints of disabling joint pain and numbness to her treating physician were somewhat sporadic and well-controlled at times with Trazadone. Tr. 210. Although Plaintiff was prescribed Vicodin for break-through pain, she required that medication only one time. Tr. 220-22. When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina*, 674 F.3d at 1111.

Finally, the ALJ partially discredited Plaintiff's testimony that she takes a four-hour nap due to fatigue because it is not supported by the objective evidence.  This conclusion by the ALJ, however, is not supported by substantial evidence in the record. Plaintiff complained of fatigue on multiple occasions, and the results of a sleep study indicate she suffers from obstructive sleep apnea with multiple respiratory disturbances at night.  Tr. 226, 412-17, 476-77.  Despite this error, the Court concludes the ALJ's reliance on this reason is harmless error.  Because Plaintiff's inconsistent activities of daily living, lack of treatment for her mental issues, and lack of medical evidence to support her allegations of disabling pain taken together constitute clear and convincing evidence, and, therefore, any error by the ALJ was harmless.  *Carmickle*, 533 F.3d at 1162.

In summary, the Court concludes the ALJ did not err when he discounted Plaintiff's credibility because the ALJ provided clear and convincing reasons for doing so.

## III. The Opinion of Dr. Potter, Treating Physician

An ALJ may reject the uncontroverted opinion of a treating physician by providing clear and convincing reasons that are supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  An ALJ may disregard a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if

the ALJ makes findings setting forth specific and legitimate reasons for doing so that are supported by substantial evidence in the record. *Lingenfelter*, 504 F.3d at 1042. *See also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Plaintiff contends the ALJ erred when he assessed two opinions of Dr. Potter: (1) a February 2009 opinion in which he found Plaintiff is disabled due to chronic pain and (2) an August 2005 opinion describing Plaintiff's functional limitations.

On February 2, 2009, Dr. Potter found Plaintiff's arthralgia interferes with her ability to function each day. Dr. Potter noted Plaintiff's pain is diffuse and impacts all of the joints in her extremities. This onset of difficulties coincided with Plaintiff's Interferon treatment. Tr. 470. Dr. Potter opined Plaintiff's arthralgia is a

> [s]ource of chronic pain that prevents her
> from working. Has seen rheumatology without
> specific diagnosis. Nerve conduction tests
> have been normal. But she has been unable to
> work for a long time. Seems to be associated
> with the treatment that she had for Hepatitis
> C. No course other than analgesic control
> and activity limitation to ameliorate
> symptoms. She is disabled because of this,
> unable to participate in gainful employment.

Tr. 472.

In the decision, the ALJ did not give any weight to Dr. Potter's 2009 opinion that Plaintiff is disabled due to her pain complaints. The ALJ rejected Dr. Potter's 2009 opinion

because it is not supported by treatment notes and because the
issue of disability rests with the Commissioner.

While the ALJ correctly states a determination of
Plaintiff's disability is reserved for the Commissioner, *see* 20
C.F.R. § 416.927(e)(1), this reason is insufficient to discount a
treating physician's opinion.  A lack of treatment notes or
clinical findings to support a physician's opinion is an
appropriate basis upon which to discount the physician's opinion.
*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(an ALJ
is not required to accept an opinion that is not supported by
clinical findings or is brief or conclusory).

A careful examination of Dr. Potter's treatment notes
indicates in June 2005 Plaintiff began complaining about pain of
an unknown origin in her hands and joints.  Tr. 222.  Plaintiff
continued to complain of pain in her hands and wrists in August
and October 2005, which appeared to improve on hyrocodone.
Tr. 220-22.  Dr. Potter referred Plaintiff to Allen G. Brooks,
M.D., in October 2005 for neurodiagnostic studies to assess the
numbness and tingling in her hands and arms in order to rule out
carpal tunnel.  Tr. 226.  Dr. Brooks performed nerve conduction
studies, which were all within normal limits.  Tr. 201.

On March 3, 2007, Dr. Potter referred Plaintiff to Richard
LaFrance, M.D., for consultation concerning her numbness and

pain in her hands.  Dr. LaFrance conducted additional EMG and
nerve conduction studies, which were normal.  Tr. 188-89.
Dr. LaFrance diagnosed Plaintiff with small fiber neuropathy.
Tr. 188.

Dr. Potter again addressed Plaintiff's arthralgia in
November 2007.  At that time Dr. Potter stated the pain in
Plaintiff's wrist, neck and knees is "well-controlled" with a low
dose of Trazadone.  Tr. 210.

Dr. Potter referred Plaintiff again to Dr. Brooks in May
2008 for another round of nerve-conduction studies, all of which
were normal.  Tr. 195.  Based on the results of the testing,
Plaintiff's nerves appeared sensitive to compression, and he
concluded neither surgery nor medication would benefit.  Tr. 195.
Dr. Brooks recommended Plaintiff simply avoid activities that
would put pressure on the nerves.

Plaintiff's next complaint of pain to Dr. Potter does not
occur until January 19, 2009.  Tr. 476.  This time, however,
Plaintiff complained of low-back pain.  Dr. Potter indicated
Plaintiff's back pain was symptomatic, that she was taking
methadone to treat it, and that this report of pain appeared to
be unrelated to her previously existing arthralgia.  Tr. 477.

A month later on February 2, 2009, Dr. Potter discussed
Plaintiff's arthralgia at length in his notes regarding an office
visit, and he opined the condition has rendered Plaintiff unable

to work.  Tr. 470-72.  His opinion is several months after
Plaintiff's normal nerve-conduction studies and a year-and-a-half
following Dr. Potter's previous notation that Plaintiff's
symptoms were well-controlled.

Dr. Potter again mentioned Plaintiff's arthralgia in her
neck and wrists in his treatment notes dated March 12, 2009, but
only when mentioning her past medical history.  Tr. 467.  At the
March 12, 2009, visit, Plaintiff's chief complaint was a sore
throat.

Thus, the record reflects the ALJ properly concluded
Dr. Potter's treatment notes do not support his conclusion that
Plaintiff is disabled due to pain from arthralgia.  Instead
Dr. Potter's treatment notes show Plaintiff complained of
arthralgia pain sporadically, and her pain was well-controlled at
times.  The Court, therefore, finds the ALJ did not err when he
did not give controlling weight to Dr. Potter's 2009 opinion
because the ALJ provided specific and legitimate reasons for
doing so.  *See Bayliss*, 427 F.3d at 1216.  *See also Batson*, 359
F.3d at 1195 (ALJ may reject treating physician's opinion if
undermined by treatment notes and not supported by the record as
a whole).

Although the ALJ did not give controlling weight to
Dr. Potter's 2009 opinion, the ALJ stated in his decision that

he was giving "significant weight" to the functional limitations espoused in Dr. Potter's 2005 opinion.  The ALJ's purported acceptance of Dr. Potter's 2005 opinion, however, is somewhat problematic.

On August 2, 2005, Dr. Potter opined:  "Disability issues would be job restrictions of no prolonged standing, squatting or kneeling.  Sitting activities would be fine.  No repetitive manipulation with the hands because of the hand symptoms."  In his decision the ALJ gave significant weight to Dr. Potter's 2005 opinion "because there is objective evidence to support the functional limitations he identified."  Tr. 25.  Plaintiff contends despite the ALJ's purported acceptance of Dr. Potter's 2005 opinion, the ALJ failed to include the limitations of no repetitive manipulation and no prolonged standing in his evaluation of Plaintiff's RFC.  The Court agrees.

The record reflects the ALJ accepted differing positions with respect to Plaintiff's limitations with her hands without appropriately resolving those differences.  The ALJ rejected Dr. Potter's 2009 opinion that Plaintiff was disabled due to chronic pain caused by arthralgia in her hands and wrists, and, conversely, the ALJ purported to accept Dr. Potter's 2005 opinion that Plaintiff could not perform repetitive manipulation, an opinion which Dr. Potter specifically premised on Plaintiff's alleged hand pain.  The Court finds the ALJ has not sufficiently

explained how to reconcile these seemingly contradictory opinions from Dr. Potter or the ALJ's acceptance/rejection of these contradictions.  *See Carmickle*, 533 F.3d at 1164 (the ALJ is responsible for resolving conflicts in the medical record).  *See also Edlund*, 253 F.3d at 1156 (case remanded when the ALJ failed to properly evaluate the physician's opinion and include limitations in his evaluation of the plaintiff's RFC).  Although the ALJ may have discounted Dr. Potter's opinion because it was inconsistent with Plaintiff's activities of daily living or because it was based on Plaintiff's appropriately discounted subjective complaints, the Court is constrained to review only the reasons provided by the ALJ.  *See Connett*, 340 F.3d at 874.

The Court, therefore, concludes on this record that the ALJ erred in his evaluation of Dr. Potter's opinion as to Plaintiff's functional limitations.

## IV.  Reviewing Physicians

Plaintiff contends the ALJ failed to incorporate all of the limitations identified by Linda L. Jensen M.D.; Martin Kehrli, M.D.; Paul Rethinger, Ph.D.; and Robert Henry, Ph.D., into the RFC.  The ALJ purportedly gave the opinions of these reviewing physicians "full weight."

### A. Drs. Jensen and Kehrli

Dr. Jensen, a state-agency reviewing medical consultant, reviewed Plaintiff's medical records and completed an RFC

24 - OPINION AND ORDER

assessment on September 9, 2008.  Tr. 354-61.  In her RFC

assessment, Dr. Jensen opined Plaintiff was capable of

occasionally lifting 20 pounds and frequently lifting ten pounds,

could stand or walk for six hours, and could sit for six hours.

Dr. Jensen concluded Plaintiff was limited in reaching in all

directions and handling (gross manipulation).  Dr. Jensen stated

"[t]he proposed Light RFC with postural limitations and frequent

bilateral grip/twist would be reasonable."[1]  Tr. 360.

     As Plaintiff correctly asserts, even though the ALJ

purportedly gave Dr. Jensen's opinion full weight, the ALJ failed

to include Plaintiff's handling limitations in the hypothetical

posed to the VE.  Dr. Jensen found Plaintiff was limited on

handling generally, but the ALJ limited Plaintiff's restrictions

with handling to overhead handling and specifically included in

the hypothetical that Plaintiff was *not* limited in her ability to

handle "down on the table."  Tr. 74.

     The Court finds the ALJ did not reconcile his acceptance of

Dr. Jensen's limitation of handling with Dr. Potter's alleged

limitation of repetitive manipulation.  As noted, the ALJ erred

in his evaluation of Dr. Potter's conflicting opinions about

---

     [1] On January 14, 2009, Dr. Kehrli reviewed all of the medical
evidence in the file and recommended affirming the assessment
conducted by Dr. Jensen.  Tr. 410.  Plaintiff's argument
concerning Dr. Kehrli's opinion is co-extensive with her argument
concerning Dr. Jensen's opinion, and, therefore, the Court does
not separately discuss those arguments.

Plaintiff's hand and wrist pain, and the Court finds the ALJ exacerbated this error by not clarifying Plaintiff's limitations on handling when he evaluated Dr. Jensen's opinion.

In addition, the ALJ failed to resolve the conflicting evidence with respect to Plaintiff's inability to stand for a prolonged time. The record reflects Plaintiff began experiencing edema in her lower legs with lesions following Interferon treatment. Dr. Potter described her edema and lesions as chronic. Tr. 205, 215, 219, 238. Plaintiff was prescribed compression stockings, and she testified she wears the stockings and needs to elevate her legs periodically, which helps with her symptoms. Tr. 70, 226.

Dr. Jensen, however, found Plaintiff can stand for six hours, which conflicts with Dr. Potter's 2005 opinion that Plaintiff cannot stand for prolonged periods. Thus, the ALJ has not satisfactorily resolved these conflicting medical opinions despite purporting to give them both "significant" and "great weight."

The Court concludes on this record that the ALJ erred when he failed to reconcile the above conflicting medical opinions. *See Edlund*, 253 F.3d at 1159-60.

### B.   Drs. Rethinger and Henry

Plaintiff argues the ALJ's evaluation of Plaintiff's RFC fails to account for Plaintiff's limited ability to work in

coordination with or proximity to others without being distracted.

On September 9, 2008, Dr. Rethinger, a state-agency reviewing psychological consultant, completed a psychiatric review technique (PRT) and a mental residual functional capacity assessment (MRFC).  In the PRT Dr. Rethinger found Plaintiff has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  Tr. 350.  In the MRFC Dr. Rethinger found Plaintiff is markedly limited in her ability to understand and to remember detailed instructions and moderately limited in her ability to carry out detailed instructions.  Tr. 362-63.  Dr. Rethinger noted Plaintiff's decreased memory "makes following complex instructions difficult.  Claimant can understand and remember simple routine work."  Tr. 364.  Dr. Rethinger also found Plaintiff can work in proximity to others, but she can become anxious and get distracted.  Tr. 364.

On January 13, 2009, Dr. Henry reviewed Plaintiff's record and affirmed the limitations set forth by Dr. Rethinger.  Dr. Henry stated "[t]he initial assessment is generous, but is supportable if the evidence is viewed in the light most favorable to the claimant."  Tr. 405.  The ALJ accurately summarized this in the decision.

In his evaluation of Plaintiff's RFC as to her alleged mental limitations, the ALJ found Plaintiff is "limited to performing one to two step tasks."  The Court disagrees with Plaintiff's suggestion that her difficulties in remembering detailed instructions was not adequately captured with the limitation to "one to two step tasks."  Dr. Rethinger opined in the MRFC that Plaintiff was not significantly limited in her ability to remember short and simple instructions.  Tr. 362. Thus, the RFC adequately addresses Plaintiff's inability to remember detailed instructions.

Plaintiff also asserts it was error for the ALJ to fail to include in his evaluation of Plaintiff's RFC her inability to work in proximity to others without being distracted.  The Commissioner contends even if such a limitation should have been included in the RFC, the error is harmless.  The Court agrees.

The VE specifically was asked at the hearing whether limiting Plaintiff to only occasional interaction with coworkers would impact the jobs identified by the VE.  The VE responded that it would not.  Tr. 75.  The VE responded that limiting Plaintiff to only occasional interaction with coworkers and to no contact with the public would not have any impact on the jobs identified by the VE as ones that Plaintiff could perform. Tr. 75.  Thus, the Court finds any error by the ALJ in failing to include the limitation of only occasionally working in proximity

to others or to no contact with the public would not have any
impact on the ultimate disability outcome.  The Court concludes,
therefore, any such error was harmless.  *See Tommassetti*, 533
F.3d at 1038.

**V.    Lay-Witness Testimony of Valorie Janssen**

Lay-witness testimony as to a claimant's symptoms or the
effect an impairment may have on the claimant's ability to work
is competent evidence that the ALJ must take into account.  *See
Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).  *See also
Stout*, 454 F.3d at 1053; *Nguyen v. Chater*, 100 F.3d 1462, 1467
(9th Cir. 1996).  The ALJ is required to consider competent lay-
witness testimony and to provide germane reasons for rejecting
such testimony.  *Valentine*, 574 F.3d at 694.  *See also Dodrill v.
Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff friend, Valorie Janssen, submitted a Third Party
Function Report dated August 21, 2008, in which she stated she
has known Plaintiff for over four years and spends 12 to 14 hours
a week with Plaintiff.  Tr. 150.  Janssen stated she attends
Bible study and Bible meetings with Plaintiff two or three times
a week.  Janssen noted she will sometimes share a meal with
Plaintiff or watch Plaintiff's children if Plaintiff has a group
meeting to attend.  Janssen stated she has seen Plaintiff "in so
much pain she literally cannot get up off the floor." Tr. 153.
She also stated Plaintiff could lift five pounds, "waddles"

rather than walks, and has such redness and swelling in her hands
that it looks painful for Plaintiff to hold a pen.  Tr. 155.
Janssen observed Plaintiff can follow simple instructions, but
she has difficulty concentrating for longer than 30-45 minutes.

In his decision the ALJ discussed Janssen's report and
determined her testimony was less than fully credible.  The ALJ
discounted Janssen's statements on the basis that she described
limitations in excess of those described by Plaintiff, and yet
she still maintained Plaintiff more than adequately cared for
Plaintiff's children.  In addition, the ALJ discounted Janssen's
testimony because Janssen had limited exposure to Plaintiff and
because her statements appeared to parrot Plaintiff's subjective
complaints.

In light of the Court's conclusion that the ALJ has provided
clear and convincing reasons to discount Plaintiff's subjective
testimony, the Court finds the ALJ has provided germane reasons
for discounting Janssen's statements on the basis that, among
other things, those statements were similar to the testimony of
Plaintiff.  *See Valentine*, 574 F.3d at 694.  The Court,
therefore, need not address Plaintiff's remaining challenges to
the ALJ's rejection of the lay-witness statements.

## VI.  Consultative Mental-Health Examination

Plaintiff alleges the ALJ erred by failing to order a
consultative examination concerning Plaintiff's depression and

anxiety.  An ALJ has a duty to fully and fairly develop the
record that is "triggered only when there is ambiguous evidence
or when the record is inadequate to allow for proper evaluation
of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th
Cir. 2001).

As noted, Plaintiff's depression had been treated with
medication, Plaintiff did not ask for any referrals, and
counseling did not appear to be indicated or recommended by any
health-care provider, including her treating physician.  In
addition, Dr. Potter did not describe any limitations resulting
from her depression, and Plaintiff's addiction counselor denied
providing mental-health treatment.  The Court, therefore,
concludes on this record that the ALJ was not required to order a
consultative examination regarding Plaintiff's emotional issues
and was not required to develop the record further as to this
issue.  *Id.*  *See also McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th
Cir. 2011).

## VII. **Plaintiff's RFC and VE Hypothetical**

In summary, the ALJ erred by failing to resolve conflicts in
the medical evidence concerning Plaintiff's ability to perform
repetitive motion, handling, and standing for extended periods.[2]

---

[2]Plaintiff contends she occasionally experiences severe
gastric pain, which is worsened with any movement.  The record

Accordingly, the ALJ's evaluation of Plaintiff's RFC is incomplete, and it is not clear whether the hypothetical question posed to the VE included all of the appropriate limitations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)(hypothetical question to VE must reflect all of claimant's limitations to have evidentiary value); *accord Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001)("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").

## REMAND

When the court finds the ALJ has erred, the court has the discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate

---

reflects Plaintiff sought treatment only one time from Dr. Potter following Plaintiff's hemicolectomy in 2008. Tr. 474. The ALJ accurately described Plaintiff's colon issues. As the ALJ discussed, Plaintiff's constipation is a side-effect of her use of Methadone, and her gastric pain appeared intermittently prior to her surgery and minimally post-operatively. Tr. 23. Because the record does not reveal nor does Plaintiff identify any specific, ongoing functional limitations caused by her colon issues, the Court concludes the ALJ did not err when he excluded any such alleged limitations from his evaluation of Plaintiff's RFC.

when there is not any useful purpose to be served by further proceedings or when the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Id.* The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* When it is not clear that the ALJ would be required to award benefits if the improperly rejected evidence were credited, the court has discretion whether to credit the evidence. *Connett*, 340 F.3d at 876.

As noted, the ALJ failed to properly evaluate and to reconcile the opinions of Drs. Potter and Jensen with respect to Plaintiff's functional limitations on repetitive motion, handling, and standing. The Court is unable to credit Dr. Potter's opinion about Plaintiff's functional limitations as true because it conflicts with Dr. Jensen's opinion, both of which the ALJ purportedly adopted.

Moreover, the ALJ's hypothetical posed to the VE is not complete, and, therefore, the hypothetical does not have any evidentiary value. *See Bray*, 554 F.3d 1228. Because there are

outstanding issues that remain unresolved, it is unclear whether Plaintiff is disabled and therefore, entitled to benefits. Accordingly, the Court reverses the ALJ's decision and remands this matter for further administrative proceedings.  Due to the nature of the errors involved in this case, the Court also directs that a consultative physical-capacities assessment be performed.

**<u>CONCLUSION</u>**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 3rd day of October, 2012.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge